UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISON
No. 3:20-CR-203-004

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| **MIKAEL ROBERTS** | ) | |

Mr. Roberts submits the following for the Court's consideration in imposing a sentence in his case:

1. Mr. Roberts submits that he was a minor participant in the conspiracy and accordingly should receive a two-level reduction through the application of USSG §3B1.2(b). The overt acts that Mr. Roberts committed to land himself in this case consisted of acting as a goffer to pick up a check from one bank and deposit in another bank. There is little to no evidence to suggest that he ever directed any person to commit any crime.

2. **Guideline Calculations - A loss amount between $550,000 and $1,500,000, resulting in a 14-level increase overstates the seriousness of the crime.**

Defendant Roberts is seeking a downward departure because the loss determination overstates the seriousness of his conduct. Application Note 21(C) of Section 2B1.1 states:

> <u>Downward Departure Consideration</u> - There may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases, a downward departure may be warranted. U.S.S.G. § 2B1.1 App. Note 21(C).

That application note recognizes that in some situations the application of the fraud loss table can overstate the seriousness of the offense. In fact, the case law is clear where application of the Guidelines' monetary tables bears little or no relationship to the defendant's role in the offense and greatly magnifies the sentence, the district court has the discretion to depart downward. *See* <u>United States v. Stuart</u>, 22 F.3d 76, 83 (3d Cir. 1994); <u>United States v. Costello</u>, 16 F. Supp. 2d 36, 39 (D. Mass. 1998).

To be clear, Defendant Roberts does not contest the guideline as it relates to the "loss

amount" to the whole conspiracy for guideline purposes; however, the loss amount grossly overstates the Defendant's role in this conspiracy for several reasons:

Jamel Johnson obtained the personal identifying information, fictitious forms of identification, and submitted the false loan application. He would then direct Mr. Roberts as to which bank to go pick-up the checks from and which bank to deposit the checks. Jamel Johnson would later instruct Mr. Roberts when it is time to withdraw money from such accounts. Mr. Roberts had a limited knowledge or scope of the scheme. He never applied or submitted fraudulent loan applications. He never obtained personal identity information of the victims or manufactured fictitious forms of identification in the victims' names. He did not personally use these fictitious forms of identification to obtain bank loans, automobile loans, and personal loans

The undersigned did not object to the guideline calculations. However, after further consideration, the defense contends that Mr. Roberts is eligible for a 2-level reduction pursuant to USSG § 3B1.2(b) for being a "minor participant."

In determining Mr. Roberts' role in the offense, the Court is obligated to "measure [his] role against the relevant conduct attributed to [him] in calculating [his] base offense level." United States v. DeVaron, 175 F. 3d 930, 943-944 (11th Cir. 1999). To succeed in this claim, Mr. Roberts has to establish that he "played a relatively minor role in the conduct for which [he has] already been held accountable." *Id*, at 944. The guideline definition of minor role also "clearly contemplates some assessment of relative culpability." *Id.* at 944.

Despite Mr. Roberts' limited role in the offense, the sentencing scheme required by the guideline treats him as if he had participated in forging the checks, opened the facilitating bank accounts, and profited from the scheme. The applicable guideline section, § 2 B1.1, provides no discount for the fact that Mr. Roberts did none of these things.

In DeVaron, there was some question about the role of the others involved in the conspiracy. In this case, though, the Presentence Report documents at length the role played by Mr. Johnson, and the other participants. Those roles far exceed Mr. Roberts' participation. The facts of the case, thus, dictate a 2-level reduction in the offense level because of Mr. Roberts' minor role.

The same result can also be reached through a departure or a variance. Mr. Roberts' sentence is largely determined by the 14-increase based on the loss amount. As has been recognized, though, "with their almost singular focus on loss amount, the guidelines sometimes

are insufficiently sensitive to personal culpability." United States v. Milne, 384 F. Supp. 2d 1309 (E.D. Wisc. 2005). *See also,* United States v. Stuart, 22 F. 3d 76, 83 (3rd Cir. 1994) ("in a few circumstances, strict application of the loss tables can overstate the seriousness the of the offense"). The Constitution Project also recognized as much.[1] The Project's Sentencing Initiative report concludes that the Sentencing Guidelines "place excessive emphasis on quantifiable factors such as monetary loss and drug quantity, and not enough emphasis on other considerations such as the defendant's role in the criminal conduct."[2] The end result is that the Guidelines produce sentences that, while uniform by the standards of the Guidelines, sometimes sentence those minimally involved much like those who are central figures in the crime. Given Mr. Roberts' role in this offense, that is exactly the circumstance here.

The commentary to § 2B1.1 notes that "there may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense" and that in "such cases, a downward departure may be warranted." USSG § 2B1.1, comment. (n. 19(C)). *See also,* United States v. Costello, 16 F. Supp. 2d 36, 40 (D. Mass. 1998) ("I conclude that in this situation a downward departure is warranted because the $20 million loss figure substantially overstates the defendant's culpability.") With the greater discretion afforded courts by the decision in United States v. Booker, 543 U.S. 22205, courts have also granted variances in cases where the loss amount overstated the defendant's responsibility. *See, e.g.,* United States v. Ranum, 353 F. Supp. 2d 984, 990 (E.D. Wis. 2005) (where the court "found the guideline range, which depended so heavily on the loss amount, greater than necessary"); United States v. Samaras, 390 F. Supp.2d 805, 809 (E.D. Wis. 2005) (where the court imposed a below-guideline sentence noting that "defendant's guideline range was driven by the high loss amount, yet he played no role in setting that amount and he profited no more than in his legitimate business dealings"); United States v. Watt, 2010 WL 1676439, *16 (D. Mass. April 27, 2010) (where the court imposed a below-guidelines sentence recognizing that the guidelines scheme, which effectively makes loss "a proxy for evaluating culpability," was not always appropriate).

---

[1] It is a group which describes itself as "a bipartisan nonprofit organization that seeks consensus on controversial legal and constitutional issues thorough a unique combination of scholarship and activism," www.constitutionproject.org/index.cfm. Its Sentencing Initiative Project included such preeminent jurists as now United States Supreme Court Justice Samuel Alito and former United States District Court Judge Paul Cassel, author of the decision in United States v. Wilson, 350 F.Supp.2d 910 (D. Utah 2005).

[2] http://www.constitutionproject.org/article.cfm?messageID=101.

Mr. Roberts is guilty of the offense of which he was convicted because he aided Mr. Johnson in committing that crime. Nonetheless, he did so without expecting substantial financial benefit, and he received very little. Furthermore, while there is no dispute that his actions were central to the commission of the crime, his role in presenting the checks to the banks, when compared with the role of Mr. Johnson and others, is a minor one. He, therefore, respectfully requests this Court to reduce his offense level by two-levels for being a minor participant or, alternatively, to impose a 24 months sentence followed by supervised release.

3  **Prevention of Unwarranted Disparity in Sentences.**

According to the *United States Sentencing Commission Statistical Information Packet* (2016), fraud offenses accounted for 9.6% of the total national caseload for that year, and 12.1% of the caseload in the Fourth Circuit. The median sentence for a defendant in a fraud case in the Fourth Circuit was 28 months. 46% were sentenced within their guidelines range; 23% received a below-guidelines sentence based on government recommendation; and an additional 24% received a below-guidelines sentence based on a downward variance.[3]

Mr. Roberts acknowledges the seriousness of his offense. However, the basis of the Sentencing Guidelines "real offense" system is "the conduct in which the defendant actually engaged." U.S.S.G. Ch. 1 Pt. A(4)(a). Moreover, the "scope" of the conspiracy for which Mr. Roberts must be held accountable "is not necessarily the same as the scope of the entire conspiracy." Rather, it is "the scope of the criminal activity the particular defendant agreed to jointly undertake." U.S.S.G. §1B1.3cmt.3(B).

4  **His Otherwise Good Character.**

In determining an appropriate sentence considering 18 USC § 3553 factors, Mr. Roberts submits the following:

1. He attended Benedict collage in Columbia, SC from January 9, 2015 until May 8, 2015. Mr. Roberts has three siblings. He has a close relationship with his family.
2. Being a person of otherwise good character is a basis to vary below advisory guideline range. U.S. v. Santoya, 493 F.Supp.2d 1075 (E.D. Wisc. 2007) (in cocaine distribution case where defendant was a career offender and guidelines 188-235 months court

---

[3] The statistics reported for racketeering/extortion offenses are substantially higher (median sentence = 72 months) than fraud offenses. This is 2-3 times the base RICO sentencing guideline (§2E1.1), which suggests these statistics relate to defendants whose substantive offenses are much more severe than wire fraud.

imposes 138 months in part because defendant "has significant positives in his character and background as evidenced by the letter from his family and fiancé which the guidelines did not take into account and because the judge is "permitted to consider the entirely of the defendant's background and character, not just the negatives reflected in his criminal history"; U.S. v. Wachowiak, 412 F.Supp.2d 958 (E.D. Wisc. 2006) *aff'd* 496 F.3d 744 (7th Cir. 2007) (where 24 year old music student convicted of possessing child pornography, and guidelines 121-151 months, and where he is in treatment and low risk of recidivism, and strong support from family, court imposes 70 months in part because "the guidelines failed to consider defendant's otherwise outstanding character, as depicted in the many supportive letters... while § 3553(a)(1) requires the court to consider the character of the defendant, the guidelines account only for criminal history.

Wherefore, Mr. Roberts respectfully requests that the Court find that he is eligible for a minor role reduction and that his background is such that a downward variance from the advisory guideline range is appropriate.

Respectfully submitted this the 2nd of November 2021.

BY:

__S/_____
Lucky T. Osho
Attorney for Defendant
402 West Trade Street, Suite 110
Charlotte, NC 28202
Telephone: 704-215-4747
Fax: (704) 288-5999
North Carolina Bar #27383
E-mail: luckylaw84@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify on this the 2nd day of November, 2021, I filed the foregoing document electronically with the Clerk of Court using the CM/ECF system.
   AUSA Jenn.sugar@usdoj.gov
   U. S. Probation Lindsay_golding@ncwp.uscourts.gov.

/s/ Lucky T. Osho